WILLIAM D. SOHIER, Executor *vs.* THE WARDENS AND . VESTRY OF ST. PAUL'S CHURCH, & others.

A testator made the following bequest: " To the wardens and vestry of St. Paul's Church in Boston I bequeath five thousand dollars, to be received and held by the legatees as the formation of a fund which I am desirous should be established for the support of a city missionary of the Protestant Episcopal Church." *Held,* that the bequest was valid, and that the legatees were competent to take it and to execute the trust.

THE plaintiff set forth, in a bill in equity, that he was executor of the last will of Edward Tuckerman, late of Boston, which was proved and allowed on the 19th day of June 1843; that said Tuckerman, by his said will, made the following bequest: "To the wardens and vestry of St. Paul's Church in Boston I bequeath five thousand dollars, to be received and held by the legatees, as the formation of a fund which I am desirous should be established for the sup- port of a city missionary of the Protestant Episcopal Church ; " that the plaintiff was provided with the means requisite for the payment of said bequest to said wardens and vestry ; that St. Paul's Church in Boston was incorporated, as a religious society, by *St.* 1819, *c.* 77, under the name of "the proprietors of St. Paul's Church in Boston," and that said corporation claimed from the plaintiff the payment of said legacy of five thousand dollars, so as aforesaid given to the wardens and vestry of said church ; that said wardens and vestry declared themselves to be a body distinct from the proprietors of St. Paul's Church, and asserted and claimed a right to have payment of said legacy made to them ; that the children of said Tuckerman, and the trustees to whom he devised the residue of his property, for the benefit of said children, claimed and insisted that neither said corporation.

nor said wardens and vestry, were entitled to recover said legacy, and denied their capacity to take said sum, and their power to execute the trust, for the performance of which said legacy was made, and further claimed that the plaintiff should pay said sum to said trustees.

The plaintiff further averred that he was desirous to pay said sum to the parties legally entitled to receive it, but was unwilling, at his own hazard and peril, to decide to whom, as between the said opposing claimants, the said legacy belongs. He therefore prayed that, to the end that the right and claim of said corporation, of said children of said testator, and of said trustees, in and to said legacy, might be settled and determined by a decree of this court, the said parties might interplead among themselves, according to law and equity, to determine their respective claims to the payment of said legacy.

The parties to the bill, who were made defendants, appeared and filed their several pleas.

*Codman,* for the wardens and vestry of St. Paul's Church. The reason for resisting the execution of the testator's will must be, either, *first,* that the object of his bounty is one which will not be supported in law or equity; or, *secondly,* that the trustee designated in the will is not capable of executing the trust, and is not a fit body to be appointed. Perhaps both these reasons may be relied on.

1. The object intended by the testator is a charitable one; and the *St.* 43 Eliz. *c.* 4, is recognized, in this State as well as in England, as the basis of the law regulating charities. *Going* v. *Emery,* 16 Pick. 107. *Sanderson* v. *White,* 8 Pick. 328. *Washburn* v. *Sewall,* 9 Met. 280. 2 Story on Eq. §§ 1154, 1162. Can any good reason be assigned why the bequest in question should not be supported? It will not be said that it is for a purpose contrary to public morals or policy. In England, where there is an established church, bequests have been supported under the statute, where the object was the advancement of a dissenting sect. **Boyle's Law of Charities,** 42.

Will it be said that the objects of this trust are so indefinite that the court will not carry them into effect? The decisions are numerous, in which bequests much less definite than this have been supported. In Boyle's Law of Charities, 24, it is said that there is no need of specifying persons or objects; the utmost latitude and generality being allowed. And many cases are there cited in illustration of this position. See also 2 Story on Eq. §§ 1149, 1169, 1181, 1182. *Powers court* v. *Powerscourt,* 1 Molloy, 616. *Bartlet* v. *King,* 12 Mass. 537. *Attorney General* v. *Pearson,* 3 Meriv. 409.

2. The trustee appointed by the will is a fit trustee for the purpose of administering the charity. Corporations can be trustees for any purposes not inconsistent with their character, and will be compelled to execute any trust that they may undertake. *Green* v. *Rutherforth,* 1 Ves. sen. 462. *Phillips Academy* v. *King,* 12 Mass. 546. It may be said, that the object of this charity is foreign to the purpose for which the corporation of the wardens and vestry of St. Paul's Church exists, viz. the care of the interests of that particular church. But this objection cannot be supported by the literal interpretation of our statutes. By Rev. Sts. *c.* 20, §§ 39, 40, the church wardens and vestry are constituted corporations "for the purpose of taking, and holding in succession, all grants and donations, whether of real or personal estate, made either to them and their successors, or to their respective churches," &c. By this language, the power of holding bequests is given to the wardens and vestry absolutely, without qualification as to the ultimate uses. They may take and hold all donations made *to them, or* (disjunctively) to their churches, or to the poor of their churches. Upon the statute, then, independently of any authority on the subject, the wardens and vestry of an episcopal church are a corporation capable of taking and holding a bequest, and executing a trust not having immediate relation to the identical parish of which they are officers. It is to be remembered that the episcopal church, throughout the United States, is organized as one entire body, and that each individual congregation,

with its officers, is but the part of one great whole, and has an interest in, and an identity of purpose and sympathy with, the operations and prosperity of that whole; that it is also a missionary church, solemnly recognized as such by its general convention. The success, therefore, of a mission for the purpose of disseminating the teachings of this church, is an object in which the whole, and each society, as a part of that whole, has an interest. Therefore the object of this charity if it be not one for which the wardens and vestry of St. Paul's Church were specially instituted, is at least cognate to the purposes of their institution. It is of the same nature, only more extended in its sphere of operations. See *Champion* v. *Smith*, Tothill, 92, 93.

This view of the subject is borne out by the authorities. In *Green* v. *Rutherforth*, before cited, there was a devise of an advowson, in the county of Suffolk, to the master, fellows and scholars of St. John's College in Cambridge, in trust, &c. Church preferment could not be one of the objects for which that college was founded; yet no objection was made that the college was not a proper trustee. In *Attorney General* v. *The Ironmongers' Co.* 2 Beavan, 313, there was a bequest to the company for the redemption of British slaves in Turkey or Barbary, and for charity schools; yet no objection was made to the trustee. In *Baker* v. *Fales*, 16 Mass. 495, Parker, C. J. said, "the very term *church* imports an organization for religious purposes, and property given to it *eo nomine*, in the absence of all declaration of trust or use, must, by necessary implication, be intended to be given to promote the purposes for which a church is instituted, the most prominent of which is the public worship of God." In the *First Parish in Sutton* v. *Cole*, 3 Pick. 232, lands were devised to a parish for the use of schools. That case is entirely similar in principle to the present. A corporation, being appointed a trustee, was held competent to administer the bequest, for an object different from, and more extended than, the immediate object of its creation.

But suppose the wardens and vestry are incompetent to

execute the trust; the want of a trustee to carry into execu-
tion a trust approved by the law is no reason why the charity
should fail, and the testator's heirs take the trust property to
themselves.   It is a well settled rule in equity, that a trust
will never be defeated for the mere want of a trustee.   The
court will supply the defect.   2 Story on Eq. §§ 976, 1059,
1165.   *Hildreth* v. *Eliot*, 8 Pick. 293.   *Greene* v. *Borland*,
4 Met. 330.   *Washburn* v. *Sewall*, 9 Met. 280.

*W. Sohier & J. Lowell*, for the testator's heirs.

The legatees are incompetent to take the bequest; and
the bequest is void for uncertainty.

1.  The legatees are incompetent.   Under the circum-
stances, they cannot take as trustees.   The remarks of
Thatcher, J. in *Phillips Academy* v. *King*, 12 Mass. 558, 559,
show that the wardens and vestry, now before the court, are
not such a corporation as can take and dispose of the legacy
in question.   In *First Parish in Sutton* v. *Cole*, 3 Pick. 232,
it was held that the support of schools was so far within the
purposes of parishes, that they might raise money therefor
by taxation.   But it will not be contended that the wardens
and vestry of St. Paul's church can assess taxes for the sup-
port of a city missionary.

As to church wardens: In Mo. 559, 560, several points
were decided upon *St.* 39 Eliz. which gave power to all well
disposed persons to found and incorporate hospitals, without
special license or charter from the queen.   The seventh point
was, that "the commissioners cannot, by decree, establish a
corporation of churchwardens, or others, to take by charita-
ble use; but they can secure land to a capable body politic
without danger of mortmain," &c.   "And they can establish
land in natural persons and their heirs, to continue charitable
uses."   In *Attorney General* v. *Ruper*, 2 P. W. 125, a
bequest was made to the parish church of St. Helen's, Lon-
don; and it was held that it went to the churchwardens.
The master of the rolls said, that as, on the one hand, the
parson of the church was a corporation for the taking of land
for the use and benefit of the church, and was not capable
of taking goods, or any personalty, on that behalf; so, on the

contrary, " the churchwardens are a corporation to take money, or goods, or other personal things, *for the use of the church,* but are not enabled to take lands." See also *Wingfield's case,* Duke, (Bridgman's ed.) 374.

By Rev. Sts. *c.* 20, § 39, " the deacons, churchwardens, or other similar officers of all churches or religious societies, shall be deemed bodies corporate, for the purpose of taking and holding, in succession, all grants and donations, whether of real or personal estate, made either to them and their successors, or to their respective churches, or to the poor of their churches." The plain construction of this is, that all gifts, intended *for the use of any society,* however made, whether personally to the officers of the society, or to the society itself, or to its poor, shall be held by the officers ; falling precisely within the above case in 2 P. W. 125, only extending to churchwardens the power of holding lands as well as personal property. And this view is confirmed by the whole tenor of the original *St.* of 1754, on this subject. Anc. Chart. 605 – 607. Churchwardens, then, have a corporate existence only so far as it has been given them by the legislature. They are enabled to hold in trust, for certain specific charitable uses ; and are, by a common maxim of law, to be taken to be unable to hold for any other charitable uses.

It has been argued, that the incapacity of the trustee is no objection in a court of equity, if the trust is such as the court would otherwise enforce. This is true, as a general rule. But the incapacity of the trustee may well be considered, in connexion with the uncertainty of the trust.

2. The bequest is void for uncertainty. It is true that bequests to charitable uses have been often supported, though very indefinitely expressed. But it must be shown, in the outset, that the use is a charitable one, or the rules of construction will not be relaxed. Is this use a charitable one ? It does not come within the terms of *St.* Eliz. *c.* 4 ; and it has never been decided to be a charity. So the question turns on the meaning of " city missionary." The testator has not defined it, and no evidence has been given of the sense in

which he used it; and none would be admissible, if offered. We know not whether the duties and objects of a city missionary are such as the court would deem charities. It will be seen, in the cases hereafter to be cited, that there are many objects of benevolence, of liberality, and of public utility, which are not technically charities, nor to be upheld as such.

As to the uncertainty : The legacy is given, "as the formation of a fund which I am desirous should be established for the support," &c. How is this city mission to be founded? how governed? how is the incumbent ·to be chosen? how removed? to whom to be responsible? How long is the fund to accumulate? In *Ewen* v. *Bannerman,* 2 Dow & Clark, 74, 98, a deed provided for the payment of six thousand pounds to certain persons, in trust, "for the foundation and establishment of a hospital in Montrose, similar to Robert Gordon's hospital in Aberdeen, for maintenance, clothing and education of the lawful sons and grandsons of decayed burgesses," to remain vested in the trustees, under such rules as the donor should appoint; and he ordered, that in case he should fail ˙to make an appointment, then the money should be under rules similar to those then existing for the management of Robert Gordon's hospital. He afterwards directed that the sum should accumulate to [blank] pounds, and be applied for assisting [blank] boys. The blanks were never filled up, and the house of lords held that the deed was void for uncertainty. In *Doe* v. *Aldridge,* 4 T. R. 264, a testator gave real estate "to the Rev. A. A., now preacher at the meeting-house in L., to hold to him during his natural life only, on the express condition that he do and shall, after my decease, settle and convey the same to trustees, *to take place at his decease, for the use and support of the* preaching of the word of God at the meeting-house at L. aforesaid forever. I further expect that he will, after my decease, without delay, settle and forward every thing in his power, *to promote and carry on the work of God at* L. aforesaid, both in his life time and after his decease." The trust was held void, and the life estate good in A. A. The ground

of this decision was, as stated by Eyre, C. J. in 2 Cox, 311, "that the object there was not sufficiently distinct." See also the following cases, in which testamentary gifts to charitable uses have been held void for uncertainty : *Grieves* v. *Case*, 2 Cox, 301. *Attorney General* v. *Bishop of Chester*, 1 Bro. C. C. 444. *Morice* v. *Bishop of Durham*, 9 Ves. 399, and 10 Ves. 521. *James* v. *Allen*, 3 Meriv. 17. *Vezey* v. *Jamson*, 1 Sim. & Stu. 69. *Ellis* v. *Selby*, 1 Myl. & Craig, 286. *Ommanney* v. *Butcher*, Turn. & Russ. 260. *Kendall* v. *Granger*, 5 Beavan, 300. *Fowler* v. *Garlike*, 1 Russ. & Myl. 232.

The cases, in which great indefiniteness of expression has been held not to render donations void, fall into two classes. *First.* Where the individual beneficiaries are uncertain, but the design of the donor is definite, or can be made so by reference to the objects of the society to or for which the donation is made. This is a large class, and includes, among others, *Washburn* v. *Sewall*, 9 Met. 280 ; *Bartlet* v. *King*, 12 Mass. 537 ; *Tucker* v. *Seaman's Aid Society*, 7 Met. 188. Those cases may also be placed in this class, where the beneficiaries and the objects are both definite, but the mode of relief is indefinite, and is left discretionary with the trustees. *Second.* Where the gift is to charity, *eo nomine.* *Attorney General* v. *Syderfen*, 1 Vern. 224, and 1 Eq. Cas. Ab. 96. *Anon.* 2 Freem. 261, 262. *Moggridge* v. *Shackwell*, 7 Ves. 36. *Mills* v. *Farmer*, 1 Meriv. 55. This class of cases is supported on the doctrine of *cy pres.* But the decisions are not very consistent. The case of *Attorney General* v. *Syderfen* has been questioned ; and the cases of *Ommanney* v. *Butcher*, and *Ellis* v. *Selby*, above cited, were distinguished from it, on very narrow grounds of difference. The later decisions have much restrained the application of the *cy pres* doctrine. See *Attorney General* v. *Minshull*, 4 Ves. 14. *Attorney General* v. *Bishop of Oxford*, 1 Bro. C. C. 444, *note.* *Attorney General* v. *Goulding*, 2 Bro. C. C. 428. *Grieves* v. *Case* 1 Ves. jr. 548.

But the doctrine of *cy pres* has never been adopted in this

Commonwealth; and though established in England, it is universally disapproved. See 2 Jac. & Walk. 307. 1 Eden, 487. 4 Ves. 14. Yet it is clear that the bequest now before the court can only be established *cy pres*, and by referring the case to a master, to approve a scheme based on that principle.

WILDE, J. This is a suit in equity, on a bill of interpleader by William D. Sohier, executor of the last will of Edward Tuckerman, deceased ; and the case depends on the validity of a bequest to the defendants in the words following : " To the wardens and vestry of St. Paul's Church in Boston I bequeath five thousand dollars, to be received and held by the legatees, as the formation of a fund, which I am desirous should be established for the support of a city missionary of the Protestant Episcopal Church." The questions discussed by counsel on the pleadings are, 1st, whether the legatees are competent to take, as trustees of a charitable donation, within the *St.* of 43 Eliz. *c.* 4; and 2d, whether the bequest is not void for uncertainty.

The first question we consider immaterial; for if the bequest is valid, it will not fail for want of a trustee capable of executing the trust, as has been frequently decided, and which the counsel for the heirs at law admit. We are of opinion, however, that the legatees are competent to take the legacy and execute the trust. The objection is, that the object of the charity is foreign to the purposes for which the wardens and vestry of St. Paul's Church were enabled to act by the Rev. Sts. *c.* 20, § 39, which enact that " the deacons, churchwardens, or other similar officers of all churches or religious societies, if citizens of the United States, shall be deemed bodies corporate, for the purpose of taking, and holding in succession, all grants and donations, whether of real or personal estate, made to them and their successors, or to their respective churches, or to the poor of their churches."

Now we cannot think that the support of the public worship of God, according to the episcopal form of worship, and for teaching and explaining the principles of the episcopal church, can be foreign to the object of the testator's donation.

On the contrary, we agree in the opinion of the late Chief Justice Parker, in *Baker* v. *Fales,* 16 Mass. 495. " The very term church," he says, " imports an organization for religious purposes; and property given to it *eo nomine,* in the absence of all declaration of trust or use, must, by necessary implication, be intended to be given to promote the purposes for which a church is instituted; the most prominent of which is the public worship of God." St. Paul's Church, therefore, had an interest in the testator's donation, and would have had a right to have it administered for the support of the public worship of God, in any form, if no particular trust or use had been designated by the will.

2. We are then brought to the consideration of the remaining question, namely, whether the bequest is void for uncertainty. On this point, many English decisions have been cited, in the able and learned argument of the counsel for the heirs of the testator, some of which are conflicting. We do not, however, think it necessary to refer to those decisions; because the court have formerly had occasion, in several instances, to consider those cases, or the most of them; and the only question now is, whether this donation falls within the principles heretofore established by this court in similar cases; as we entertain no doubt of the correctness of those decisions. The leading case is that of *Bartlet* v. *King,* 12 Mass. 537. That was an action of debt, brought by legatees, to whom was bequeathed the sum of thirty thousand dollars, by the last will of Mary Norris, against the executor of her will. The bequest was given in trust, that the trustees should permit the American Board of Commissioners for Foreign Missions, and their associates, to take and receive the interest and income of the capital sum, for the purposes of said board, and to promote the pious objects thereof; and upon their request, the trustees were required to dispose of, invest and transfer, the capital sum, in such manner as said board should direct. Several objections were made to the validity of the bequest; one of which was, that it was void for uncertainty as to the object of the legacy, and of the persons who were intended

to be the *cestuis que trust.* And this was the principal objection made. But the court decided that the bequest was valid, although at that time there was no court, in this Commonwealth, to compel the execution of the trust. This case appears to have been well considered by the court, and an able and very clear and satisfactory opinion was given by the late Mr. Justice Dewey, in which the English authorities are reviewed and considered.

The next case I shall notice is *Going* v. *Emery,* 16 Pick. 107 ; a very strong case in support of the bequest in question. The bequest was to the cause of Christ, for the benefit and promotion of true evangelical piety and religion, and to be, by certain trustees named in the will, distributed in such divisions, and to such societies and religious charitable purposes, as they might think fit and proper. And it was held by the court, that this devise was not void for uncertainty, by virtue of the *St.* 43 Eliz. *c.* 4. In delivering the opinion of the court, the present chief justice remarked, that it was "admitted in the argument, and indeed it cannot now be contested, that if the *St.* 43 Eliz. *c.* 4, in regard to charitable uses, is in force in this Commonwealth, it is sufficient to sustain and give effect to this trust ; because there are innumerable cases, in which trusts quite as vague as the present have been declared valid, and carried into effect. I will refer to only one striking case, where a testator gave a thousand pounds to such charitable purposes as he had by. another writing directed. The paper referred to was not found, so that it stood generally as a gift to charitable uses. The trust was established, and the direction to a particular object left with the king, as *parens patriæ.*" This was the case of *Attorney General* v. *Syderfen,* 1 Vern. 224.

In *Burbank* v. *Whitney,* 24 Pick. 146, the bequest was of four thousand dollars ; to the American Bible Society, to the American Education Society, to the American Colonization Society, and to the American Home Missionary Society, one thousand dollars to each. Some of these societies were incorporated, and some not. These bequests were held valid ; and as to the bequests to the unincorporated societies, it was held

that they were good under the provisions of *St.* 43 Eliz. *c.* 4, if not good without the aid of that statute. It was held that a trust was created by the will, and that, on the death of the testator, the legal estate vested in the executor, which he was bound to hold in trust for the legatees, which trust this court, as a court of equity, could compel him to perform. The same question afterwards was decided in *Bartlett* v. *Nye,* 4 Met. 378, as to real estate devised to the American Bible Society ; and it was held that the trust was well created, although the American Bible Society could not take the legal estate, (they not being incorporated,) but the same descended to the heirs of the devisor, subject to the trust, which they were bound to execute. The decision in the case of *McCartee* v. *Orphan Asylum Society,* 9 Cow. 484, is there cited with approbation, in which Chancellor Jones says, " it is the settled doctrine of the court, in the construction of wills and the administration of trusts, that a trust shall never be permitted to fail through the failure or disability of the trustee to execute the trust, but shall be supported upon the intention of the testator ; that the trust is attached and fastened to the land ; and that the land remains chargeable with it in the hands of the heir or devisee."

In *Potter* v. *Chapin,* 6 Paige, 649, 650, Chancellor Walworth says, that it may now be considered as an established principle of American law, that the court of chancery will sustain and protect gifts, bequests, or dedication of property to public or charitable uses, provided the same is consistent with local laws and public policy, where the object of the gift or dedication is specific and capable of being carried into effect according to the intention of the donor. And several cases are cited by him, which fully sustain the general principles.

All these decisions fully support the present trust. In some of them, the objects of the trusts were more uncertain than the one under consideration, which is specific and sufficiently certain ; and there can be no doubt that it can be carried into effect, according to the testator's manifest intention.

And it cannot be doubted, that the support of a mission‑ary for instruction in the christian religion, in the city or out, at home or abroad, is not opposed to local law, or any other law in a christian country; but, on the contrary, all such objects are eminently entitled to encouragement, as has been frequently decided in this and other countries.

The order of the court will be, that Mr. Sohier, as executor of the last will of Edward Tuckerman, do pay over to the wardens and vestry of St. Paul's Church in Boston the sum of five thousand dollars, without interest, and that no costs be allowed to either party.